SEGUNDO FAICAN, ITALO
ESPINOSA, LEODORO TORIBIO,
EDINSON GOMEZ, GEORGE
ROMERO, MAURICIO MURILLO,
individually and on behalf of all others
similarly situated,

                Plaintiffs,          MEMORANDUM AND ORDER

      -against-                    10-CV-1118 (JG)

RAPID PARK HOLDING
CORPORATION,

                Defendant.
----------------------------------------------------------------x

A P P E A R A N C E S:

    ABDUL K. HASSAN
        215-28 Hillside Avenue
        Queens Village, New York 11427
        *Attorney for Plaintiffs*

    CRAIG L. COHEN
        20 Old Kings Highway
        Weston, Connecticut 06883
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Plaintiffs, six current and former parking garage managers for the defendant, Rapid Park Holding Corporation, brought this action on behalf of themselves and other garage managers employed by the defendant, claiming that they are owed overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216 et seq., and New York Labor Law. Both parties now seek approval of a class settlement under 29 U.S.C. § 216(b), which has been interpreted to require plaintiffs to opt in to a class action alleging FLSA violations by affirmatively notifying the court of their intention to join the lawsuit.

BACKGROUND

Under the proposed settlement agreement, Rapid Park has agreed to pay $552,741.06 into a settlement fund. The 52 garage managers eligible to join the class may each make claims against the fund for 67 percent of their net unpaid overtime wages for the period from March 9, 2004 through March 11, 2010 if they choose to accept the settlement. Within 30 days of the expiration of the opt-in period, Rapid Park is obligated to deliver to class counsel the settlement check due to each class member; class counsel will mail the checks to the class members. If eligible class members choose to reject the settlement – to opt out of the class – Rapid Park retains the portion of the settlement fund those eligible class members would have been entitled to had they joined the class. If fewer than 37 eligible class members accept the settlement, Rapid Park has the option to repudiate the settlement agreement.

In addition, Rapid Park has agreed to pay class counsel Abdul Hassan a fixed sum of $258,000 for fees and expenses if the settlement is executed, regardless of the number of eligible class members who accept the settlement. If all 52 eligible class members accept the settlement, the payment will constitute nearly 32 percent of the total paid by Rapid Park to settle the action.

In other words, Rapid Park has agreed to pay a total of up to $810,741.06, of which, assuming all of that money is paid, class counsel will receive almost 32 percent. Under the proposed settlement, if fewer than all eligible class members (but more than 36) opt in, (1) Rapid Park's total payout will go down, (2) each participating class member's settlement share will remain fixed, and (3) class counsel's fee as a percentage of Rapid Park's total payout will rise. As discussed below, I condition my approval of the settlement on modifications that will affect only (2) and (3), i.e., if fewer than all (but more than 36) eligible class members opt in,

each participating class member's settlement share will increase and class counsel's fee will remain 32 percent of Rapid Park's total payout.

DISCUSSION

The Fair Labor Standards Act permits one or more employees to bring an action for unpaid wages and other relief on behalf of themselves and other employees "similarly situated" as long as each plaintiff "gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought." 29 U.S.C. § 216(b); *see De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (construing § 216(b) as requiring that plaintiffs affirmatively opt in to class actions under FLSA). Plaintiffs can satisfy the requirement that the class be composed of "similarly situated" employees by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Iglesias-Mendoza v. La Bell Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (internal quotation marks omitted). All of the plaintiffs and potential plaintiffs here are or were garage managers for Rapid Park who were not paid overtime wages. Consequently, they are "similarly situated" for the purpose of the statute, a characterization that Rapid Park has stipulated to in the proposed settlement agreement.

Although the proposed settlement and the benefits it provides to the putative class appear generally acceptable, I find that some aspects of the settlement itself and the notice to the class warrant modification. My approval of the proposed settlement is contingent upon the assent of both parties to the modifications I describe below.

A. *Attorney's Fees*

It is well established that "an attorney [who] succeeds in creating a common fund from which members of a class are compensated for a common injury" is "entitled to a

reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In determining a reasonable fee, the court may properly employ either the lodestar or percentage of the recovery methods of calculation. *See id.* Under the first approach, the court decides the number of hours reasonably billed to the class and the appropriate hourly rate, then multiplies those figures to calculate the lodestar. *See id.* The court may, in its discretion, apply a multiplier to the lodestar to account for less objective factors, such as the risk of the litigation and performance of counsel. *See id.* Under the second approach, the court determines the appropriate fee as a percentage of the common fund, after accounting for more and less objective factors. *See id.* "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Id.*

Here, counsel's fee constitutes nearly 32 percent of the common fund, assuming that all eligible class members accept the settlement. At this percentage, the size of the fee is not in itself unreasonable. It is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers, even considering that the settlement was reached three months after the action was filed and without any motion practice. *See id.* at 48 (noting that the lodestar method discourages early settlement). Rather, what causes me concern is that the fee remains static, and thus rises as a percentage of the common fund, to the extent eligible class members do not opt into the settlement. The rationale for deducting the class counsel's fee from the common fund is an equitable one: "It prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost." *Id.* at 47. That principle does not justify enforcing a fee computed on the premise that all eligible class members will accept the settlement when in fact some will

4

likely reject the settlement and its benefits, and the class members who do accept the settlement are not recovering one hundred percent of their unpaid wages.

For this reason, I condition my approval of the settlement on the parties' agreement that class counsel will be paid 32 percent of the common fund – that is, the attorney's fee should be set at 32 percent of the sum of (1) the total of opting-in class members' Settlement Shares, as defined in paragraph 3(a) of the proposed settlement agreement, and (2) $258,000. If the remaining 68 percent of the common fund exceeds the total of opting-in class members' Settlement Shares, as defined in paragraph 3(a) of the proposed settlement agreement, the difference must be distributed pro rata to the class.

Class counsel objects to setting the fee this way, despite the small practical effect this change is likely to have if, as he says, at least 46 eligible class members are eager to accept the settlement. He suggests that the $258,000 fee should remain fixed because it includes payment for any costs incurred in litigating the action, and costs are usually paid in addition to the fee. He is correct that costs are often treated that way, but he has not suggested that his litigation expenses actually were significant. Indeed, they appear to be minimal, given the short life of the case and the lack of motion practice. The costs of administering the settlement also appear small. There are only 52 eligible class members to whom he must mail the notice of settlement and consent forms, and because Rapid Park has agreed to calculate and cut the settlement checks for each plaintiff, he needs only to mail the checks to class members.

Counsel also suggests that setting his fee as a fraction of the total amount actually paid to class members, as opposed to the total amount that could be paid to class members if all eligible class members opted in, is in tension with *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). But that case merely clarified that an attorney's fee in a common

fund cases should be based on the total amount paid by the defendant to benefit the class, even if part of that sum is not distributed to individual class members but as donations to charities believed to indirectly benefit class members. Hassan, in contrast, is not seeking a fee based on the entire amount paid to benefit class members. He is instead seeking a fee based on that amount *plus* the amount that Rapid Park would have paid to eligible class members who rejected the settlement if they had accepted the settlement. *Masters* offers no support for this position.

Finally, counsel suggests that scrutiny of an agreed-upon fee is not as appropriate in a FLSA class action because "the Court's protective and oversight role is less than it is in a Rule 23 class action." He cites no authority for the proposition that a court is absolved of its duty to exercise "a jealous regard" to the rights of those who are interested in a common fund merely because the class is opt-in rather than opt-out. *See Goldberger*, 209 F.3d at 53.

B.  *Notice*

I condition my approval of the proposed settlement on the following changes to the proposed Notice of Collective Action Settlement:

1.  Replace the first paragraph under the heading "The Settlement Terms" on page 2 with:

This lawsuit involves a dispute between Defendant and its parking garage managers as to whether the parking garage managers were entitled to overtime pay and certain other amounts provided by statute. If this dispute is decided by the Court, the managers may get more than provided for in the Settlement Agreement. It is also possible they could get less. Naturally, settlement involves compromises by both sides. This proposed settlement will eliminate the risks of litigation while guaranteeing that the Plaintiffs and all Class Members will receive substantial compensation.

2.  Replace the third, fourth, and fifth paragraphs under the heading "The Settlement Terms on page 2 with:

Your net unpaid overtime wages earned during the Class Period have been calculated to be $_____(before taxes). As a general guide in arriving at this figure, your overtime wages for the six-year Class Period were calculated, minus any overpayments including any credit or offset already paid to you by Defendant during the Class Period. **Defendant has agreed to pay approximately 67 percent of your net unpaid overtime wages, or**

6

**$_____ (your "Settlement Share"), to settle the case with you in exchange for the enclosed release of claims ("Consent and Release").** This same method of calculation was used to determine the settlement share for each and every other Class Member, but the Settlement Share for each Class Member will vary based on the Class Member's weekly hours, weekly wages, and duration of employment with Defendant.

In addition to your Settlement Shares of $_____, you will receive 100 percent of overtime pay of at least 1.5 times your regular rate if you perform overtime work for Defendant after the effective date of this settlement.

Finally, you may, but are not guaranteed to, receive some additional money if at least 37 but fewer than all eligible Class Members accept the settlement.

Approximately 32 percent of the total amount paid by the defendant to settle the lawsuit will be paid to Class Counsel Abdul K. Hassan for fees and expenses. No additional fees or costs will be deducted from your Settlement Share of $_____, or from any additional amount you receive if fewer than all eligible Class Members accept the settlement. Unless you choose to reject the settlement, you will be represented by Class Counsel Abdul K. Hassan.

3. Replace the second paragraph under the heading "Timeline" on page 4 with:

This Notice is simply a summary of the Settlement Agreement that has been preliminarily approved by the Court.

CONCLUSION

The settlement agreement and notice are approved subject to the parties' acceptance of the modifications described above. If the parties consent to the modifications, they should file a proposed revised agreement and notice with the Court on or before July 13, 2010. Notice and consent forms should not be mailed to eligible class members until the Court has received and finally approved the revised proposed agreement and notice.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 29, 2010
      Brooklyn, New York